**COMMERCE BANK OF ST. LOUIS, N.A., Plaintiff-Respondent,**

v.

**W. Polk WRIGHT and Elinor Faust Wright, Defendants-Appellants.**

No. 43576.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 26, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 14, 1983.

Application to Transfer Denied Feb. 23, 1983.

**18**

Thomas J. Frawley, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, for defendants-appellants.

Jerome L. Rubenstein, Kathleen R. Sherby, St. Louis, Lloyd A. Palans, Clayton, for plaintiff-respondent.

STEPHAN, Judge.

This is an action by a creditor bank of a bankrupt corporation against two persons who had guaranteed payment of the bankrupt's debt. Defendant guarantors appeal from summary judgment in favor of the bank. We affirm the judgment as modified.

Summary judgment is proper only if the pleadings, depositions, admissions on file, and affidavits demonstrate clearly that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. Rule 74.04(c). In reviewing the entry of summary judgment, we examine the entire record in the light most favorable to appellants and resolve any doubts in their favor. *Edwards v. Heidelbaugh*, 574 S.W.2d 25, 27 (Mo.App.1978). The record on appeal shows the following uncontested facts.

In December of 1972, defendant W. Polk Wright offered to buy the outstanding shares of stock of the Buck X–Ograph Company from the current shareholders for a certain price. He negotiated with plaintiff bank for a loan to finance this stock acquisition. Plaintiff bank agreed to make a loan directly to the corporation, secured by the corporation's real estate, fixtures, inventory, equipment, machinery, accounts receivable, and certificates of deposit, with the personal guarantees of Mr. and Mrs. W. Polk Wright for additional security.

The purchase offers were accepted by owners of more than ninety percent of the corporation's stock by the end of February, 1973. Arrangements were made for certificates representing such shares to be placed by the sellers in an escrow account along with blank stock transfer endorsements. On March 5, 1973, the corporation's note, containing the promise to pay to the order of plaintiff bank the principal amount of

$360,000 plus interest at the rate of 8¼% per year (10% after default) in installments according to a set schedule, was executed by the corporation's president. That same day, March 5, 1973, the defendants, W. Polk Wright and Elinor Faust Wright, signed a guaranty agreeing to pay all loans made by the plaintiff bank to the corporation. The president of the corporation, by letter dated March 5, 1973, directed the bank to pay the proceeds of the loan to the stock escrow account. In due course such funds were dispersed to the selling shareholders, the tendered stock certificates were surrendered to the corporation, and a new certificate for the shares was issued in the name of W. Polk Wright.

On September 25, 1975, the corporation filed a voluntary petition in bankruptcy in United States District Court for the Eastern District of Missouri. The bank filed a proof of claim against the bankrupt's estate, demanding amounts due and owing on the note.

As part of the bankruptcy proceedings, the court authorized the sale of the corporation's real estate for $300,000. Expenses were deducted, and the remaining proceeds of the sale, $255,044.83, were ordered to be held in an interest-bearing certificate of deposit in the plaintiff bank in accordance with a stipulation agreement between the bank and the trustee, which is not part of the record of this appeal. The bankruptcy court further ordered that the liens of the bank be transferred from the realty to the certificate of deposit, the funds represented thereby, and all earnings in respect thereof, pending a final determination of the validity of those liens.

The equipment of the corporation was sold for $46,406, and the court specifically ordered that the bank's lien in at least a portion of that property be transferred to the proceeds of the sale. The trustee collected $1,822.11 of the corporation's accounts receivable.

The trustee in bankruptcy, in November of 1976, filed a complaint in bankruptcy court against the bank alleging that the March 5, 1973 note of the corporation was for "fictitious consideration" and that the security interests or liens incident thereto were null and void, since none of the $360,000 loan proceeds were received by or for the corporation and thus the corporation had no value in return for encumbering all its assets. The trustee described the transaction as a personal loan to W. Polk Wright "camouflaged" as a loan to the corporation. The trustee also demanded actual and punitive damages from W. Polk Wright and other individuals, as officers and directors of the corporation, for their participation in the March 5, 1973 transaction. The bank crossclaimed against W. Polk Wright and brought third party complaints against a title insurance company which insured the mortgage on the corporation's property and Elinor Faust Wright.

Those parties, except for the Wrights, joined in a "Stipulation for Dismissal" on November 17, 1978, to settle the above claims. The title insurance company agreed to pay $15,000 to the bank to reimburse the bank for its losses incurred in connection with the note of March 5, 1973. Four officers and directors of the corporation, for their contribution to the settlement, undertook to pay $6,350 to the trustee and $1,150 to the bank. Again, the stated purpose of the $1,150 payment was to reimburse the bank for its losses in connection with the corporation's note. The trustee agreed that he would pay the principal balance owed to the bank on the note, $202,637.30, and assign to the bank its claim against W. Polk Wright. In return the bank stipulated that:

> Upon receipt of the sum of Two Hundred Two Thousand Six Hundred Thirty-Seven and 30/100 ($202,637.30) Dollars, the law requiring that said sum be utilized to satisfy that portion of Commerce Bank of St. Louis, N.A.'s claim against Buck X-Ograph Company, Bankrupt, which is allowable in bankruptcy, Commerce Bank of St. Louis, N.A., for itself, its successors and assigns and anyone claiming through or under it, hereby acknowledges that Commerce Bank of St. Louis, N.A., has no further claims against Buck X-Ograph

Company which are allowable in bankruptcy and, therefore, covenants and undertakes with Buck X-Ograph Company, Bankrupt, and Lawrence Sanders, Trustee in Bankruptcy of the Estate of Buck X-Ograph Company, Bankrupt, forever to refrain and desist from instituting or asserting against Buck X-Ograph Company, Bankrupt, or Trustee in Bankruptcy of the Estate of Buck X-Ograph Company, Bankrupt, and claims, causes of action, demands or suits of whatever nature or kind, either directly or indirectly, for the recovery of any amounts arising under and by virtue of the above-described Promissory Note dated March 5, 1973, and all first-lien deed of trust and security interest in and to the Bankrupt's property allegedly securing the repayment of the aforesaid Promissory Note;

The stipulation for dismissal was approved by the bankruptcy court on January 5, 1979, and on January 16, 1979, the trustee assigned its claim against W. Polk Wright to the bank. On March 5, 1979, the bank paid to the trustee the balance of the proceeds of the sale of the realty (reduced by $202,637.30 which the bank retained as its share of the settlement) and interest on the sale proceeds (which amounted to approximately $47,000). The bank had in addition to the principal balance of $202,637.30, the $15,000 from the title insurance company and $1,150 from the corporate directors and officers.

On October 11, 1979, the debts of the Buck X-Ograph Company, duly adjudged a bankrupt, were discharged.

In June of 1979 the bank brought the instant suit against defendants on their guaranty. Both sides moved for summary judgment, each side supporting its motion with affidavits and exhibits. The court denied defendants' motion, and granted plaintiff's motion for summary judgment in the amount of $114,864.40.[1] This sum represented interest on the outstanding daily balance of the loan from September 25, 1975 to January 16, 1979, in the amount of $68,-

318.40, and attorney's fees of $41,560.00 incurred in collecting the note and attorney's fees of $4,986.00 incurred enforcing defendants' guaranty. Defendants appealed.

Two arguments can be discerned from defendants' single point on appeal. First, that in the "Stipulation for Dismissal" of the trustee's complaint the bank released the debtor corporation without expressly reserving its right to pursue the guarantors, so that the guarantors were prejudiced by the loss of any right of subrogation against the debtor and thereby discharged. Second, that the bank had a security interest in the corporation's assets, the value of which exceeded the entire amount owed by the debtor to the bank, and the bank's failure to satisfy all debts from this collateral discharged the guarantors.

The bank specifically rebuts these contentions, but relies primarily on the strong language of the guaranty, which it says absolutely obligated defendants to pay the note regardless of the bank's dealings with the collateral or the corporate debtor. In particular, the bank points to these two provisions of the guaranty:

> Before proceeding hereunder against any of the undersigned or against any of the Collateral, resort need not be made by Bank to any collateral or other security pledged by Debtor or by any of the undersigned, nor need Bank exhaust any remedy against Debtor, nor against any other endorser, surety or guarantor of the Liabilities.

and

> No substitution, release or surrender of any collateral or other security held by Bank to secure any Liabilities of Debtor, nor the substitution, release or death of any other party liable for the payment of any liabilities of Debtor, whether the same be a signer to this guaranty or otherwise, shall affect the liability of the undersigned to bank.

The written guaranty was a separate contract between defendants and the bank, independent of the promissory note of the corporation; yet both agreements were integral parts of the loan/stock-purchase

---

1. This was designated a final judgment for purposes of appeal within the meaning of Rule 81.06. The bank's additional action against W.

Polk Wright was not finally adjudicated and is not before the court.

transaction, contemporaneously executed, so that the guaranty can be considered part of the note. *Edwards v. Heidelbaugh,* 574 S.W.2d 25, 28 (Mo.App.1978). The question whether the bank's settlement with the corporation discharges defendant guarantors is controlled by the Uniform Commercial Code. Section 400.3–606, RSMo. 1978 [2] provides as follows:

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

(a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

(2) By express reservation of rights against a party with a right of recourse the holder preserves

(a) all his rights against such party as of the time when the instrument was originally due; and

(b) the right of the party to pay the instrument as of that time; and

(c) all rights of such party to recourse against others.

The Missouri Code Comment and Uniform Commercial Code Comment explain the language of that section in the following passages:

Missouri Code Comment

The words 'any party to the instrument' are used to make it clear that the surety-

ship defenses provided herein are available to any party who is in the position of a surety and not just to parties secondarily liable.

Uniform Commercial Code Comment

1. The words 'any party to the instrument' remove an uncertainty arising under the original section. The suretyship defenses here provided are not limited to parties who are 'secondarily liable,' but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so.

2. Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge.

■■■ The promissory note of the corporation was an "instrument" since it was a written memorandum containing the corporation's unconditional promise to pay a certain sum of money to the order of the bank according to a set time schedule, signed by the corporation's president. Sections 400.3–102(1)(e) and 400.3–104. The defendant guarantors were parties to the instrument even though their guaranty was a separate document, or dehors the note itself, since they were known participants in the loan/stock-purchase transaction of which the note and guaranty were contemporaneous, integrated events. See *Provident Bank v. Gast,* 57 Ohio St.2d 102, 386 N.E.2d 1357, 1359 (1979).[3] See also § 400.1–201; *Edwards v. Heidelbaugh,* supra.

■■ Neither the defense of release or agreement not to sue the corporation, nor the defense of impairment of collateral is available to the guarantors since they consented, by the unambiguous terms of the

2. All further statutory references are to RSMo 1978 unless otherwise designated.

3. Other courts have held U.C.C. § 3–606 does not apply to separate guaranty contracts since

they are not "instruments." See *Union Planters National Bank of Memphis v. Markowitz,* 468 F.Supp. 529, 535 (W.D.Tenn.1979); *First National Bank in Albuquerque v. Energy Equities Inc.,* 91 N.M. 11, 569 P.2d 421, 426 (App.

guaranty set out above, to pay the debt regardless of any release of the corporation or use of the collateral.

 In its dealings with the corporate debtor and the collateral, the bank was obliged to act in good faith and with a reasonable degree of care; defendant guarantors did not consent to fraud or negligence or waive their right to object thereto. See *Citizens Bank of Windsor v. Landers,* 570 S.W.2d 756, 760 (Mo.App.1978); *Glass v. Heller,* 287 S.W. 871, 873 (Mo.App.1926). We do not believe, however, that defendants' argument can be read as a pleading of bad faith or negligence, or that the facts would support such an accusation. We find no reason to upset the judgment of the trial court, in this respect.

 Defendants are entitled to some relief on this appeal, however, since they should have received credit for the $15,000 paid to the bank by St. Paul Title Insurance Co. "to partially reimburse Commerce Bank for its losses incurred in connection" with the note and for attorneys' fees. Likewise, the bank received $1,150 from some officers and directors named in the trustee's complaint. It is axiomatic that the bank cannot collect twice for these amounts, and the summary judgment in favor of the plaintiff in the amount of $114,864.40 must therefore be reduced by $16,150. The judgment is therefore remanded to the trial court with directions to enter judgment for the plaintiff for the sum of $98,714.40. Rule 84.14; *Pope v. Pope,* 520 S.W.2d 634, 637 (Mo.App. 1975).

 The bank, in its brief, contends it is entitled to such additional attorneys' fees as are incurred in defending this appeal, and apparently asks this court to hear evidence

and award fees at the conclusion of the appeal process. This request is supported by no citation of authority whatsoever. Attorneys' fees incurred after judgment on a note or guaranty which provides for collection costs and attorneys' fees are not allowed since the creditor's cause of action on the note or guaranty is merged in the judgment, and so the bank's request is denied. *Citizens Bank of Windsor v. Landers,* 570 S.W.2d 756, 764 (Mo.App.1978).

The judgment, as modified, is affirmed and remanded to the trial court for modification.

STEWART, P.J., and CRANDALL, J., concur.

---

1977); *Ishak v. Elgin National Bank,* 48 Ill. App.3d 614, 6 Ill.Dec. 630, 632, 363 N.E.2d 159, 161 (1977); *National Bank of Detroit v. Alford,* 65 Mich.App. 634, 237 N.W.2d 592, 593 (1975). These courts apparently would apply § 3–606 to a guaranty contract appended to a note or other negotiable instrument. We can see no logical reason to apply the UCC to a note and then apply the common law to a contract guaranteeing payment of that note simply because each is on a separate piece of paper where, as here, the rights and obligations represented by those documents are welded together by the

circumstances which created them. We are guided to the correct path by the comments to § 3–606 which show that the suretyship relationship can arise as part of, or dehors, the instrument; and consent can be given before or after the creditors' action, and usually, but not always, is incorporated in the instrument.

The guaranty itself recites that Article 9 of the UCC will govern the disposition of collateral furnished by the guarantors (there was none), which indicates our conclusion that the UCC applies and is consistent with the intent of the parties.