**U.S. SUZUKI MOTOR CORPORATION,**
Appellant,

v.

**Gary L. JOHNSON, et al., Respondents,**

and

**Cycle Five, Inc. d/b/a Leadbelt Honda
Suzuki, etc., Defendant.**

No. 47973.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 26, 1984.

V. Kenneth Rohrer, Farmington, for appellant.

Dana Hockensmith, Hillsboro, for respondents.

REINHARD, Judge.

Plaintiff appeals from an order dismissing Counts II through VI of its petition for failure to state a claim for relief. The order was denominated final for purposes of appeal pursuant to Rule 81.06.

In Count I of its petition, plaintiff alleged that on March 3, 1978, it entered into a dealer franchise agreement with defendant Cycle Five, Inc., d/b/a Leadbelt Honda Suzuki. Cycle Five, Inc. was owned equally by Gary Johnson, David Agers, Dennis Flynn, Lloyd Agers and Robert Nappier.

Thereafter, on August 6, 1980, Cycle Five, Inc. entered into a wholesale financing security agreement with ITT Diversified Credit Corporation (hereinafter ITT). Cycle Five, Inc. financed its inventory of motorcycles through this financing security agreement with ITT. Thereafter, Cycle Five, Inc. defaulted under the terms of the security agreement owing ITT $8,490.93. On February 2, 1983, for valuable consideration, ITT assigned its claim against Cycle Five, Inc. for principal, interest, attorney's fees and costs to U.S. Suzuki Motor Corporation. In addition, defendant Cycle Five, Inc. owed U.S. Suzuki Motor Corporation $974.97 on an open account for parts. Plaintiff sought recovery from Cycle Five, Inc. on the parts account and on ITT's claim against Cycle Five, Inc. in the total amount of $9,465.90.

In Counts II through VI, plaintiff alleged that each of the owners, as well as David Agers' wife, on January 30, 1978 executed a continuing guaranty with plaintiff. Each guarantor agreed:

to pay to U.S. Suzuki Motor Corporation ... (hereinafter called Creditor), ... on demand, ... any and all indebtedness of ... Leadbelt Honda-Suzuki (hereinafter called Debtors) to creditor. The word "indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Debtors or any one or more of them, heretofore, now, or hereafter made, incurred or created, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether Debtors may be liable individually or jointly with others....

Each of the guarantors' liability was limited to $5,000.00. All of the allegations of Count I were incorporated into Counts II through VI. Plaintiff prayed for judgment against each guarantor in the amount of $5,000.00. The trial court sustained defendants' motions to dismiss Counts II through VI for failure to state a claim upon which relief can be granted. The order was denominated final for purposes of appeal.

A pleading is good against an objection that it fails to state a claim upon which relief can be granted if averments of the pleading accorded every reasonable and favorable intendment, invoke principles of substantive law which may entitle the pleader to relief. *DeMaranville v. Fee Fee Trunk Sewer, Inc.*, 573 S.W.2d 674, 676 (Mo.App.1978). A pleading is not defective even if plaintiff is not entitled to all of the relief sought, so long as he has averred enough to entitle him to some relief. *City of Creve Coeur v. Creve Coeur Fire Protection District*, 355 S.W.2d 857, 859 (Mo. 1962).

In order to state a cause of action *ex contractu* the plaintiff must allege the making and existence of a valid and enforceable contract between plaintiff and defendant, the right of plaintiff and the obligation of defendant thereunder, a violation thereof by defendant and damages resulting to plaintiff from the breach. *Johnson v. Great Heritage Life Insurance Co.*, 490 S.W.2d 686, 691 (Mo.App.1973). *See Mis-*

*souri Military Academy v. McCollum,* 344 S.W.2d 636, 637 (Mo.App.1961).

The only issue in this case is whether plaintiff's petition alleges an obligation of defendant to plaintiff under the guaranty agreement. It is well settled that the liability of a guarantor is to be strictly construed according to the terms agreed upon, and a guarantor is bound only by the precise words of his contract, and no stretching or extension of terms can be indulged in order to hold the guarantor liable. *Pelligreen v. Century Furniture & Appliance Co.,* 524 S.W.2d 168, 172 (Mo. App.1975). Other words cannot be added by construction or implication, but the meaning of the words actually used is to be ascertained in the same manner as the meaning of similar words used in other contracts. They are to be understood in their plain and ordinary sense, when read in the light of the surrounding circumstances and the object intended to be accomplished. *Zoglin v. Layland,* 328 S.W.2d 718, 721 (Mo.App.1959).

It is apparent that the claim for unpaid parts purchased by Cycle Five, Inc. from plaintiff is covered by the plain meaning of the guaranty and hence, plaintiff has stated a claim for relief for this amount. Indeed, defendants candidly conceded this in oral argument. The more difficult question presented is whether the guaranties cover the assigned debt to ITT.

We note that the guarantee makes no express reference to indebtedness of the debtor incurred to third parties which subsequently is assigned to creditor. Plaintiff argues that the term "indebtedness" is defined broadly in the guarantee and by the plain terms of the guaranty, the debt of Cycle Five, Inc. to ITT now assigned to plaintiff is a debt, liability or obligation of the Debtor "made, incurred or created, . . . however arising" which indebtedness each guarantor has agreed to pay to the plaintiff. We acknowledge that the term "indebtedness" is defined broadly in this guarantee. However, this was a continuing guarantee and as such, it contemplated "a series of transactions between the debtor and the creditor, rather than a single debt." *Bruce v. Landmark Central Bank & Trust Co.,* 592 S.W.2d 198, 200 (Mo.App. 1979). Neither the incurring of indebtedness to ITT by Cycle Five, Inc., nor the subsequent assignment of that indebtedness, was a transaction between plaintiff and Cycle Five, Inc., but rather, involved one or the other separately.

The broad definition of "indebtedness" used here conflicts with the purpose of a continuing guaranty. This creates a latent ambiguity for which parol evidence will be admissible to explain the true intent of the parties. *Wired Music, Inc. v. Great River Steamboat Co.,* 554 S.W.2d 466, 469 (Mo.App.1977); *Zoglin v. Layland,* 328 S.W.2d 718, 721 (Mo.App.1959). Defendants assert that they had no intention to guarantee this indebtedness. However, this case is before us on plaintiff's petition and must be construed favorably to plaintiff. The intention of the parties cannot be determined from the four corners of the instruments. The case must be reversed and remanded to allow the development of facts of the surrounding circumstances and the object intended to be accomplished by the guaranty agreement.

This result is consistent with the only reported case involving a guarantee under circumstances at all similar to those in the case at bar. In *Sherman Car Wash Equipment Co. v. Maxwell,* 297 F.Supp. 712, 714 (E.D.Pa.1969), plaintiff brought suit for $168,569.09 against defendants under a guaranty in which they guaranteed the "due payment . . . by . . . Maxwell Sales and Engineering Company . . . of all . . . obligations which said Maxwell Sales and Engineering Co. may at any time owe to said Sherman Car Wash Equipment Company, however created." Of the amount sought, $107,860.18 was owed by Maxwell Sales to Shermax Corp., a subsidiary corporation of Sherman Car Wash, but which was subsequently assigned by Shermax Corp. to Sherman Car Wash Equipment Co. Defendants contended the guaranty did not cover the Shermax accounts

because the guaranty was not intended to cover the indebtedness of Maxwell Sales to other creditors to . whom Sherman might succeed by assignment. After a trial to the court, the court held that the amounts owed to Shermax and subsequently assigned to Sherman Car Wash and Engineering Co. were not covered by the terms of the guaranty. The court found that the parties did not intend for the guarantee to cover this indebtedness.

No matter how skeptical we may be that this guarantee was intended to cover Cycle Five, Inc.'s indebtedness which plaintiff might obtain by assignment,[1] nonetheless we cannot say as a matter of law there is no evidence which might be presented under which defendants might be liable for this indebtedness.

Reversed and remanded.

KAROHL, P.J., and CRANDALL, J., concur.

---

1. The contract between ITT and Cycle Five, Inc. was not entered into until over two years after the franchise agreement and guaranty were signed.