**LEMAY BANK & TRUST CO., Appellant,**

v.

**Milton LAWRENCE, et al., Respondents.**

**No. 49712.**

Missouri Court of Appeals, Eastern District, Division Three.

March 25, 1986.

Marc Sandberg, John S. Meyer, Jr., Bryan, Cave, McPheeters & McRoberts, St. Louis, for appellant.

Gregory O'Shea, St. Louis, for respondents.

GARY M. GAERTNER, Judge.

Plaintiff, Lemay Bank and Trust Co. (Lemay Bank), brought this action for breach of contract against defendants, who had guaranteed payment of certain loans issued by the bank. After a trial to the court, judgment was entered in favor of the defendant guarantors. Lemay Bank appeals from that judgment. We reverse and remand.

In 1974, defendant Emil Heimos, Jr., (Heimos) and Milton D. Lawrence (Lawrence) were engaged in a business partnership known as H & G Equipment Co. (H & G). On July 26, 1974, Heimos and his wife (the Heimoses) executed a continuing guaranty[1] whereby they guaranteed payment of any existing or future debts owed by H & G to Lemay Bank.[2] At that time, H & G owed Lemay Bank $18,000 under a demand

---

1. Lawrence and his wife also executed a continuing guaranty, and they were originally named as defendants in this action, together with the Heimoses. On or about July 1980, however, the Lawrences filed bankruptcy, thereby discharging their obligation under the continuing guaranty. The case has since proceeded only against the Heimoses. As used herein, "defendants" refers exclusively to the Heimoses.

2. The continuing guaranty provided, in pertinent part:

The [guarantor] hereby absolutely and unconditionally guarantees to Lemay Bank and Trust Co., a corporation (Bank), the prompt payment when due, in accordance with the terms thereof, of any and all indebtedness or other obligations for the payment of money...in any manner whatsoever now or hereafter existing of H & G Equipment Co. (Borrower) to Bank, together with any and all extensions or renewals thereof.

line of credit and $17,426.85 on an install-ment loan. The installment loan was se-cured by several pieces of heavy equipment owned by H & G.[3]

At some point in 1975, Heimos and Law-rence dissolved their partnership by mutual agreement. At trial, Lemay Bank's only witness was Frank Ziegler, a vice president of the bank. Ziegler supervised all of H & G's credit transactions with Lemay Bank. He testified that Heimos and Lawrence had indicated to him in 1975 that they were "having problems". He further testified, however, that he had no knowledge of H & G's dissolution until 1979, when this action was filed.

The defendants' only witness at trial was Heimos. He testified that in 1975 he told Ziegler he "wanted to split" and to "get out of" his business with Lawrence. He also testified that some time in 1975 or 1976 he told Ziegler that he and Lawrence thought they "could take over the business."

In May 1977, $18,000 remained due on H & G's demand line of credit, and an addi-tional $3,800 was owing on the installment loans. Ziegler testified that at that time Heimos and Lawrence indicated to him they could no longer make the monthly payments on the installment loans. Lemay Bank thus consolidated the installment loans into the demand line of credit, for a total balance of $21,800.

On May 17, 1977, H & G executed a demand note renewing its $21,800 debt un-der the consolidated line of credit. Three more renewal notes were subsequently exe-cuted, the last one on December 2, 1979. Although the signatures of both Lawrence and Heimos appear on each of the notes, Ziegler testified that only Lawrence signed them in his presence at Lemay Bank. Af-ter each such signing, Lawrence would take the note with him for the stated pur-pose of securing Heimos's signature. Each of the notes was subsequently returned to Ziegler, bearing what appeared to be Hei-mos's signature.

At trial, Heimos testified that he never signed any of the renewal notes. He fur-ther testified that at some point in 1976 or 1977 Ziegler called him to ask when he was going to sign a note, whereupon Heimos told him that he had not signed any notes and was unaware of any such notes. De-fendants also introduced into evidence the written report of a handwriting expert who opined that Heimos's signature had been forged onto each of the renewal notes. Ziegler testified that he never had any rea-son to suspect that Heimos's signature had been forged.

When the last renewal note became due on August 2, 1979, Lemay Bank demanded that the Heimoses pay the $21,800 owing under the line of credit. The Heimoses failed to make this payment, and Lemay Bank brought this action to enforce the continuing guaranty against them. After hearing all the evidence, the court conclud-ed that Lemay Bank had effectively re-leased defendants from their obligation un-der the continuing guaranty. The court thus entered judgment in favor of defend-ants, and Lemay Bank has appealed from that judgment.

For the sake of clarity, we will not con-sider Lemay Bank's points on appeal in the same order that they are set forth in the bank's brief. We first consider points two and three, wherein the bank alleges that certain factual findings made by the trial court were not supported by the evidence before the court.

Preliminarily, we note that under Rule 73.01, we must sustain the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless the trial court has erroneously declared or ap-plied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Substan-tial evidence" is evidence which, if true, has probative force upon the issues. Such evi-dence must be sufficiently substantial for

---

**3.** This collateral included two tractors, two dump trucks, two backhoes, a floater trailer, a high lift and a road grader. Heimos testified that the fair market value of this equipment was in excess of $22,000.

the trier of fact to reasonably find those facts that the evidence was introduced to prove. *Reproductive Health Services, Inc. v. Lee,* 660 S.W.2d 330, 335 (Mo.App.1983).

In point two of its brief, Lemay Bank challenges the trial court's finding that the bank had reasonable notice as early as 1975 that H & G had been dissolved as a partnership. Lemay Bank argues that this finding was not supported by substantial evidence, and that the court misapplied the legal standard for notice of dissolution.

■ It is well established that the appropriate standard for determining whether notice of dissolution has been given to a partnership creditor is whether such notice has been "brought home" to the creditor. *Truck Leasing Corp. v. Swope,* 248 S.W.2d 84, 85 (Mo.App.1952). Such notice must be given directly, or delivered through some channels that the law recognizes as legitimate means of communication. *Fenix v. Celebrezze,* 289 F.Supp. 758, 766 (W.D.Mo. 1968).

■ In the case before us, the evidence does not support a finding that notice of dissolution was "brought home" to Lemay Bank before 1979. Ziegler expressly denied receiving such notice, and Heimos, in his communications with Ziegler, never gave any direct notice of dissolution. Defendants seemingly suggest that Ziegler should have inferred from the circumstances or discovered through his own investigation that the partnership had been dissolved. The law, however, places no such duty upon a partnership creditor; rather, it is the duty of the partners to "bring home" the notice of dissolution to the creditors. This Heimos and Lawrence failed to do.[4]

In light of this record, we must conclude that Lemay Bank did not receive notice of dissolution before 1979. None of the evidence presented at trial was sufficiently substantial to support the trial court's factual finding that Heimos notified Ziegler of the dissolution in 1975. Nor does the evidence support the legal conclusion that notice of dissolution was "brought home" to Lemay Bank through any legitimate means of communication. Accordingly, we hold that the trial court erred in finding that Lemay Bank received notice of dissolution as early as 1975.

■ In point three of its brief, Lemay Bank challenges two other findings of fact made by the trial court. The first of these is a finding that the partnership's debt totalled only $18,000. Lemay Bank contends that the total debt, after consolidation, was $21,800. The evidence supports the bank's contention, and defendants concede this point in their brief. We thus hold that the trial court erred in making this finding. Secondly, the bank challenges the trial court's finding that Heimos verbally requested that the bank repossess the equipment being held as collateral. In note 4, *supra,* we explained that Heimos's testimony does not support such a finding. The remainder of the record likewise offers no support, and we thus hold that the trial court also erred in making this finding.

■ We next consider Lemay Bank's argument that the trial court erred in finding that the bank had released defendants from their obligation under the continuing guaranty by failing to preserve the loan collateral. The bank contends that this finding was erroneous because, by the terms of the continuing guaranty, defend-

---

4. Defendants contend that the trial court's finding was buttressed by Heimos's purported testimony to the effect that he told Ziegler in 1976 or 1977 to sell the equipment being held as loan collateral. Our review of the record, however, indicates that Heimos made no such statement to Ziegler. On direct examination by his attorney, Heimos testified:

Q When you stopped doing business with Mr. Lawrence, what communications if any did you give to Lemay Bank?

A Sell the equipment and pay off the loan.
Q Did you, in fact, go to Lemay Bank?
A I told Doug Lawrence.

This testimony indicates that Heimos told his partner to sell the equipment, but did not tell Lemay Bank. Upon further questioning, moreover, Heimos testified unequivocally that he never asked the bank to pick up any of the equipment.

ants consented to paying H & G's debt regardless of the bank's failure to repossess or liquidate the collateral. This court recently set forth the principles applicable in construing guaranty contracts:

> It is well settled that the liability of a guarantor is to be strictly construed according to the terms agreed upon, and a guarantor is bound only by the precise words of his contract, and no stretching or extension of terms can be indulged in order to hold the guarantor liable. *Pelligreen v. Century Furniture & Appliance Co.,* 524 S.W.2d 168, 172 (Mo.App. 1975). Other words cannot be added by construction or implication, but the meaning of the words actually used is to be ascertained in the same manner as the meaning of similar words used in other contracts. They are to be understood in their plain and ordinary sense, when read in the light of the surrounding circumstances and the object intended to be accomplished. *Zoglin v. Layland,* 328 S.W.2d 718, 721 (Mo.App.1959).

*U.S. Suzuki Motor Corp. v. Johnson,* 673 S.W.2d 105, 107 (Mo.App.1984). Any material alteration of the guarantor's obligation under the guaranty contract will, therefore, discharge the guarantor, unless the guarantor has consented to such alteration. *Citizens Bank of Smithville v. Lair,* 687 S.W.2d 268, 270 (Mo.App.1985); *Missouri Farmers Association, Inc. v. Wolfe Brothers Farm, Inc.,* 681 S.W.2d 15, 20 (Mo.App. 1984).

In *Commerce Bank of St. Louis v. Wright,* 645 S.W.2d 17 (Mo.App.1982), a creditor bank of a bankrupt corporation sued the guarantors of the bankrupt's debt. The defendant guarantors appealed from the trial court's order granting summary judgment to the bank. On appeal, defendants argued, *inter alia,* that their liability under the guaranty contract was discharged because the bank had failed to satisfy the corporation's debts out of the corporate assets, in which the bank held a security interest. The bank, on the other hand, contended that defendants were not discharged because the guaranty expressly provided that the bank could proceed against the guarantors before making any resort to the collateral.[5]

The *Wright* court first observed that the Uniform Commercial Code, § 400.3–606(1)(b) RSMo 1978, provides that

> [t]he holder [of an instrument] discharges any party to the instrument to the extent that without such party's consent the holder...unjustifiably impairs any collateral for the instrument given by...the party...against whom he has a right of recourse.

The Uniform Commercial Code Comment for that section explains:

> Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge.

The *Wright* court then determined that the guarantors had agreed, by the unambiguous terms of their guaranty, to pay the corporation's debt regardless of how the collateral was used. The court thus held that the guarantors had waived their right to raise the defense of impairment of collateral.[6]

---

**5.** The opinion sets forth the following provisions from the guaranty:

> Before proceeding hereunder against any of the undersigned or against any of the Collateral, resort need not be made by the Bank to any collateral or other security pledged by Debtor or by any of the undersigned, nor need Bank exhaust any remedy against Debtor, nor against any other endorser, surety or guarantor of the Liabilities.
>
> . . . .
>
> No substitution, release or surrender of any collateral or other security held by Bank to secure any Liabilities of Debtor, nor the substitution, release or death of any party liable for the payment of any liabilities of Debtor, whether the same by a signer to this guaranty or otherwise, shall affect the liability of the undersigned to bank.
>
> *Id.* at 20.

**6.** The court noted that its decision might have been different if the guarantors had adduced evidence of bad faith or negligence on the part of the bank:

■ The *Wright* decision applies directly to the instant case. The continuing guaranty executed by the Heimoses provided as follows:

[T]he obligation of Guarantor [the Heimoses] hereunder is primary and may be enforced directly against Guarantor independently of and without proceeding against Borrower [H & G] or foreclosing any collateral pledged to [Lemay] Bank; ... Bank may sell, exchange, release, and/or surrender or otherwise deal with all or any of the collateral pledged to Bank by Borrower to secure said indebtedness or obligations...without releasing Guarantor....

By the unambiguous terms of this agreement, which is substantially the same as the guaranty in *Wright*, defendants assumed primary liability for the partnership's debts. Defendants' obligation to repay those debts thus remained unaffected by any acts or omissions of Lemay Bank in relation to the loan collateral. The evidence does not, moreover, support a conclusion that Lemay Bank acted negligently or in bad faith in dealing with the collateral. The bank was never asked to repossess the collateral, nor was it under any affirmative obligation to do so. Accordingly, we hold that the trial court erred in finding that the bank's failure to repossess the collateral released defendants from their obligation under the continuing guaranty.

We next consider Lemay Bank's argument that the trial court erred in finding that the bank had released defendants from their obligation under the continuing guaranty by accepting forged renewal notes. The trial court explained that defendants did not consent to any forgery or to the replacement of existing notes by forged notes. The bank argues on appeal that the forgery of Heimos's signature was immaterial because Lawrence's signature on the renewal notes was sufficient to bind both partners.

Missouri's Uniform Partnership Law, chapter 358 RSMo 1978, provides that

[a]fter dissolution a partner can bind the partnership ... [b]y any transaction which would bind the partnership if dissolution had not taken place, provided the other party to the transaction...[h]ad extended credit to the partnership prior to dissolution and had no knowledge or notice of the dissolution....

Section 358.350.1(2)(a) RSMo 1978. Prior to Missouri's adoption of the Uniform Partnership Act, our Supreme Court stated:

The rule is that the renewal of a note by one partner of the firm after dissolution without notice of dissolution is binding on the other party who had no knowledge of its renewal.

*Seufert v. Gille*, 230 Mo. 453, 482, 131 S.W. 102, 110 (Mo.1910). *See also Swope, supra* at 85; *State ex rel. Massman Construction Co. v. Shain*, 344 Mo. 1003, 1014, 130 S.W.2d 491, 496 (Mo.1939); *Citizens' Trust Co. v. Tindle*, 194 S.W. 1066, 1068 (Mo. App.1917).

■ In the instant case, the Heimoses consented, by the express terms of the continuing guaranty, to extensions and renewals of H & G's debt with Lemay Bank.[7] We have previously determined that Lemay Bank had no notice of H & G's dissolution when Lawrence signed the renewal notes. Under § 358.350.1(2)(a) RSMo 1978, Lawrence thus had the power to bind both himself and Heimos to a renewal of the partnership's debt. Heimos's forged signature on the renewal notes was, therefore, irrelevant to H & G's liability on the notes. The record is devoid, moreover, of any evidence indicating that Lemay Bank was a party to the forgeries or accepted the re-

In its dealings with the corporate debtor and the collateral, the bank was obliged to act in good faith and with a reasonable degree of care; defendant guarantors did not consent to fraud or negligence or waive their right to object thereto.

*Id.* at 22. *See also Lair, supra* at 271.

7. The continuing guaranty provided that "[Lemay] Bank, in its discretion, [could] extend the time of payment, renew, or change the manner, place, time or terms of payment of all or any of [H & G's] indebtedness or obligations...without releasing Guarantor...."

newal notes in bad faith. Accordingly, the Heimoses remained bound to repay H & G's debt under the terms of the continuing guaranty. We thus hold that the trial court erred in finding that Lemay Bank's acceptance of the forged notes released the Heimoses from their obligation under the continuing guaranty.

Having concluded that defendants are bound to repay H & G's debt regardless of Lemay Bank's failure to liquidate the collateral or its acceptance of the forged renewal notes, we hold that the trial court erred in entering judgment for defendants. Lemay Bank claims that, under the terms of the current renewal note, it is entitled to recover interest and attorney's fees in addition to the $21,800 owing on the note. We thus remand this action to the trial court for entry of judgment in favor of the bank and for a determination of the appropriate measure of the bank's damages.

Reversed and remanded.

KAROHL, P.J., and SIMON, J., concur.