**MERCANTILE BANK, N.A., f/k/a Mercantile Bank of Western Missouri, Respondent,**

v.

**Michael F. LOY and Diane L. Loy, and Timothy M. Loy and Denise A. Loy, Appellants.**

No. 24500.

Missouri Court of Appeals, Southern District, Division I.

June 12, 2002.

Kevin Checkett, Checkett & Pauly, P.C., Carthage, for Appellant.

Jason J. Higdon, Spencer, Scott & Dwyer, P.C., Joplin, for Respondent.

ROBERT S. BARNEY, Chief Judge.

This is an action by a creditor bank of a bankrupt corporation against four persons who had guaranteed payment in varied amounts of the bankrupt's debt. Guarantors appeal from the trial court's judgment in favor of the creditor bank and against the guarantors, jointly and severally, in the amount of $230,833.75 together with interest at the rate of 9.25% from and after July 13, 2001, and attorney fees of $31,220.97. As more fully explained below, in their sole point on appeal Guarantors premise trial court error in "finding as valid the written waiver of surety defenses contained within their absolute guaranty."

In a bench trial, the standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), which interprets what is now Rule 73.01(c). *Tower Props. Co. v. Allen*, 33 S.W.3d 684, 687 (Mo.App.2000). "Under this standard, this court will affirm and sustain the judgment of the trial court unless it is not supported by substantial evidence, it is against the

weight of the evidence, or it erroneously declares or applies the law." *Id.*

"A guarantor agrees to become secondarily liable for the obligation of a debtor in the event the debtor does not perform the primary obligation." *Jamieson–Chippewa Inv. Co. v. McClintock,* 996 S.W.2d 84, 87 (Mo.App.1999). "A guaranty is thus a species of contract." *Id.* "The rules of construction applicable to a guaranty are the same as applied to other contracts." *Royal Banks of Missouri v. Fridkin,* 819 S.W.2d 359, 361 (Mo. banc 1991).

A guaranty is a "collateral agreement for another's undertaking, and is an independent contract which imposes responsibilities different from those imposed in the agreement to which it is collateral." *Jamieson–Chippewa,* 996 S.W.2d at 87. "A 'continuing' guaranty is one that contemplates guaranteeing a series of possible transactions between the debtor and creditor, rather than only a single such transaction." *Id.*

"A guaranty agreement may be construed together with any contemporaneously executed agreements dealing with the same subject matter, as an aid in ascertaining the intention of the parties." *Id.* "However, this does not mean that those agreements constitute a single contract, and the liability of the guarantor remains primarily dependent on the guaranty agreement itself." *Id.* "It is the guaranty contract itself which defines the obligations and rights of both the guarantor and guarantee." *Id.* at 87–88.

" '[T]he liability of a guarantor is to be strictly construed according to the terms agreed upon, and a guarantor is bound only by the precise words of his contract, and no stretching or extension of terms can be indulged in order to hold the guarantor liable.' " *Lemay Bank & Trust Co. v. Lawrence,* 710 S.W.2d 318, 322 (Mo. App.1986) (quoting *U.S. Suzuki Motor Corp. v. Johnson,* 673 S.W.2d 105, 107 (Mo.App.1984)). Moreover, interpretation of the guaranty contract cannot rely on other words being added by construction or implication, but the meaning of the words actually used is to be ascertained in the same manner as the meaning of similar words used in other contracts. *Id.*

The record shows that prior to bankruptcy Ag Service Centers, L.C. ("Ag Service") provided fertilizers and chemicals to farmers, including the spreading and delivery of such products. Respondent, Mercantile Bank of Western Missouri, ("Mercantile") provided financing for Ag Service, in return for the execution of two corporate promissory notes. The first promissory note was for $375,000 and the second was for $850,000 and used as a capital line of credit. Both promissory notes contained provisions for interest and attorney fees in the event of collection. As security, Mercantile took security interests in Ag Service's "inventory, motor vehicles, equipment, fixtures, accounts, and general intangibles."

Each of the Appellants, Michael F. Loy, Diane L. Loy, Timothy M. Loy and Denise A. Loy ("Guarantors"), signed a "Continuing Guaranty Agreement," which set out, in part:

4. PRIMARY LIABILITY. Guarantor is primarily liable under this Agreement, regardless of whether or not Bank pursues any of its remedies against Borrower, against any other maker, surety, guarantor or endorser of the Obligations or against any collateral securing the Obligations.

. . . .

9. RELEASE OF COLLATERAL. Guarantor agrees that any collateral which secures all or part of the Obli-

gations (Collateral) may be assigned, exchanged, released in whole or in part or substituted without notice to Guarantor and without defeating, discharging or diminishing the liability of the Guarantor. Guarantor's obligation is absolute and Bank's failure to perfect any security interest or any act or omission by Bank which impairs the Collateral shall not relieve Guarantor of Guarantor's liability under this Agreement.

Ag Service filed for Chapter 11 bankruptcy in the summer of 1999. Following its Chapter 11 filing, a bankruptcy trustee was appointed. The trustee inspected Ag Service facilities at Lockwood, Missouri, Pierce City, Missouri and Jasper, Missouri. After the Jasper, Missouri inspection, the trustee took the position that Mercantile was unperfected as to certain leasehold improvements at the Jasper, Missouri facility.

Mercantile did not contest the trustee's decision that certain assets at the Jasper facility were unperfected. Following the bankruptcy judge's approval, the trustee sold the assets. Mercantile did not object to the sale of the assets at the Jasper facility. The sale generated $185,000.

The trial court concluded that had Mercantile perfected its security interest in the assets of the Jasper facility there would have been sufficient funds to pay all of indebtedness to Mercantile owed by Ag Services. But the trial court also concluded that there was no evidence that Mercantile Bank acted in bad faith or in any way attempted to deceive Guarantors and found that there remained an outstanding

debt owed to Mercantile by the Guarantors in the amount of $230,883.75, consisting of principal and interest, and that Mercantile had expended $31,220.97 in attorney fees in attempting to collect the debt.

In their argument, Guarantors concede that Mercantile did not practice "deceit or dishonesty." Rather, Guarantors argue that despite the language of the Continuing Guaranty Agreement, Mercantile's failure to perfect its security interest as to assets in the Jasper, Missouri facility, together with its failure to contest the bankruptcy trustee's opinion that such assets should not be applied against the guaranteed debt, constituted a lack of "good faith and fair dealing." We disagree. As discussed, *infra*, the disposition of this case is controlled by *Lemay Bank & Trust Co. v. Lawrence*, 710 S.W.2d 318 and *Commerce Bank of St. Louis v. Wright*, 645 S.W.2d 17.

In *Lemay Bank*, the individual guarantors executed a continuing guarantee relative to an existing debt, as well as future debts of a business partnership. *Id.* at 319. The existing debt was also secured by several pieces of heavy equipment owned by the partnership. *Id.* at 320. The continuing guarantee was similar to that executed by the Guarantors in the instant case.[1] The *Lemay Bank* guarantors contended that they had been released from their obligation under their continuing guaranty due to the bank's failure to preserve the loan collateral in question after the partnership had been dis-

---

1. The continuing guaranty executed by the *Lemay Bank* guarantors provided as follows: The obligation of [the *Lemay*] Guarantor ... hereunder is primary and may be enforced directly against [the *Lemay*] Guarantor independently of and without proceeding against Borrower ... or foreclosing any collateral pledged to Lemay Bank; ... [Le-

may] Bank may sell, exchange, release and/or surrender or otherwise deal with all or any of the collateral pledged to [Lemay] Bank by Borrower to secure said indebtedness or obligations ... without releasing [the *Lemay Bank*] Guarantor. 710 S.W.2d at 323.

solved. The Western District of this Court observed:

> By the unambiguous terms of this agreement ... [guarantors] assumed primary liability for the partnership's debts. [Guarantors'] obligation to repay those debts thus remained unaffected by any acts or omissions of Lemay Bank in relation to the loan collateral. The evidence does not, moreover support a conclusion that Lemay Bank acted negligently or in bad faith in dealing with the collateral. The bank was never asked to repossess the collateral, *nor was it under any affirmative obligation to do so.*

Id. at 323 (emphasis added).

Likewise, in *Commerce Bank,* 645 S.W.2d 17, a creditor bank of a bankrupt corporation sued the guarantors of the bankrupt corporation's debt. As in the instant case, among the arguments asserted by the *Commerce Bank* guarantors was that their guaranty contract was discharged because the creditor bank had failed to satisfy the bankrupt corporation's debts out of the corporate assets, in which the creditor bank held a security interest. *Id.* at 19–20. The Eastern District of this Court held that the *Commerce Bank* guarantors had agreed "by the unambiguous terms of the guarantee set out above, to pay the debt regardless of any release of the corporation or use of the collateral." *Id.* at 21–22. The *Commerce Bank* court also noted that the foregoing facts would not support an accusation of "bad faith or negligence." *Id.* at 22.[2]

In the instant matter, the Continuing Guaranty Agreement signed by the Guarantors expressly permitted Mercantile to release the collateral without discharging the liability of the Guarantors. As both *Lemay Bank* and *Commerce Bank* recognize, such a provision is legal and enforceable. Furthermore, there was no specific allegation in the pleadings or evidence presented at trial that Mercantile failed to act in good faith or otherwise was negligent in dealing with the collateral *once it became security for the loans.* In either event, the plain language of paragraph 9 of the Continuing Guaranty Agreement provided, *in-*

---

**2.** Contrary to Guarantors' contentions we do not agree that Article 3 of the U.C.C. is implicated here. While the court in *Commerce Bank* found that U.C.C. § 3–606, RSMo 1978 (predecessor version of U.C.C. § 3–605, RSMo Cum.Supp.1992) applied, it did so on the basis that both the guaranty agreement and the promissory note in question were integral parts of the loan/stock purchase transaction, contemporaneously executed, so that the guaranty can be considered part of the note. *Id.* at 21. We observe, however, that the Eastern District in *Jamieson–Chippewa Inv. Co.,* recently reiterated the proposition that a guaranty was a "collateral agreement" consisting of "an independent contract" imposing "responsibilities different from those imposed in the agreement to which it is collateral." *Id.* at 87; *see also Ulreich v. Kreutz,* 876 S.W.2d 726, 728 (Mo.App.1994) and *Standard Meat Co. v. Taco Kid of Springfield, Inc.,* 554 S.W.2d 592, 595 (Mo.App.1977). These latter three cases point out that while a guar-

anty may be construed together with a contemporaneously executed agreement dealing with the same subject matter, "this does not mean that those agreements constitute a single contract," rather "the liability of the guarantor remains primarily dependent on the guaranty agreement itself." *Jamieson–Chippewa,* 996 S.W.2d at 87; *Taco Kid,* 554 S.W.2d at 595; *see Ulreich,* 876 S.W.2d at 728. Unlike the facts in *Commerce Bank,* which involved financing of a stock swap in which the trustee in bankruptcy complained involved "fictitious consideration," to the bank, 645 S.W.2d at 19, here there is nothing to suggest that the transaction was anything other than a run-of-the mill financing mechanism by which individual guarantors gave added security for a corporate debt and where the guarantors' liability arose from the guaranty agreement itself, in which event should be "strictly construed according to the terms of the guaranty agreement." *Royal Banks,* 819 S.W.2d at 362.

*ter alia*, that "Guarantor's obligation is absolute and Bank's failure to perfect any security interest or any act or omission by Bank which impairs the Collateral shall not relieve Guarantor or Guarantor's liability under this Agreement." *See LeMay Bank*, 710 S.W.2d at 322 (meaning of words in guaranty agreement are understood in their plain and ordinary sense, when read in the light of the surrounding circumstances and the object intended to be accomplished).

As a general rule, where a guarantor "assumes primary liability for the debt, that liability is unaffected by any acts or omissions of the creditor in relation to the loan collateral." *Manzo v. Metro North State Bank*, 759 S.W.2d 77, 81 (Mo.App. 1988). By the unambiguous terms of the guaranty agreement, Appellants assumed primary liability for the debts of Ag Service. Because Appellants agreed to be primarily liable under the terms of the guaranty agreement, Mercantile did not have a duty to pursue other avenues of repayment. *See id.; Lemay Bank*, 710 S.W.2d at 323. Mercantile was neither legally negligent in its disposition of the collateral in question nor did it act in bad faith by not attempting to prevent the bankruptcy trustee from selling the Jasper facility's assets or by not perfecting its security interest in that facility. Point denied.

The trial court's judgment is affirmed.

SHRUM, P.J., and MONTGOMERY, J., concur.