

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

| | | |
|---|---|---|
| PULASKI BANK, | ) | No. ED99060 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Thea Anne Sherry |
| NANTUCKET PARTNERS, L.C., A | ) | |
| MISSOURI LIMITED LIABILITY | ) | |
| COMPANY, and JULIAN HESS, | ) | |
| Defendants, and KEITH BARKET, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 22, 2014 |

Introduction

Keith Barket ("Barket") appeals from the judgment of the trial court granting summary judgment in favor of Respondent Pulaski Bank ("Pulaski"). Pulaski brought suit to collect on a promissory note executed by Nantucket Partners, L.C. ("Nantucket"). The note was secured by personal guaranties executed by Nantucket's three co-owners: Julian Hess ("Hess"), David Goffstein ("Goffstein"), and Barket. On appeal, Barket asserts that Pulaski cannot recover on his personal guaranty because the addition of new collateral to secure the renewal of Nantucket's note constituted a material modification of the guaranty obligation and, therefore, discharged Barket's liability on the note. Because Barket's personal guaranty was a continuing guaranty

that specifically authorized Pulaski to take and hold additional security to secure the note at any time and without notice, we affirm the judgment of the trial court.

Factual and Procedural History

Nantucket was a Missouri limited liability corporation co-owned by Barket, Hess, and Goffstein that was engaged in real estate development. Barket was a minority member in Nantucket and did not actively engage in its management or operations. Hess and Goffstein managed Nantucket's day-to-day operations.

In July of 2006, Nantucket obtained a loan from Pulaski to refinance the prior purchase and ongoing renovation of townhouses located in St. Louis County, Missouri. Goffstein and Hess executed a promissory note ("the Note") evidencing the loan in the original principal amount of $716,000.00 on behalf of Nantucket. At the same time, Hess, Goffstein, and Barket executed separate commercial guaranties to individually and personally secure the Note. The Note was additionally secured with a first deed of trust on the townhouses to be rehabilitated, located at 3339-3343 Wisconsin Ave.

In June 2008, Hess and Goffstein requested that Pulaski advance Nantucket additional funds to pay interest accrued under the Note and to renew the Note for an additional 12 months. Because the real estate value of the townhouses securing the Note had deteriorated, Pulaski required Nantucket to pledge additional collateral as a condition of the renewal. Hess and Goffstein offered a second deed of trust on unrelated property located at 3141, 3143, 3145, and 3147 Glenwood Court ("the Glenwood property") as the additional collateral. Pulaski accepted the second deed of trust on the Glenwood property and thereafter advanced Nantucket the additional funds and renewed the Note. On December 4, 2009, Goffstein and Hess executed

2

another renewal of the Note. Pulaski did not require additional collateral for the 2009 renewal, but raised the interest rate on the Note.

The Note matured on March 21, 2010. On April 8, 2010, Pulaski made demand to Nantucket for payment of the amounts due under the Note. Thereafter, Nantucket failed to make the payments due under the Note, and Hess, Goffstein, and Barket also each failed to make the payments due under their respective guaranties.

On April 22, 2010, Pulaski filed an action to collect under the Note and the guaranties executed in 2006. In his Answer, Barket raised the affirmative defense that Pulaski could not recover under his guaranty because the addition of new collateral and increase in interest rate constituted material changes to the Note. On December 9, 2010, Pulaski filed a motion for default judgment against Nantucket and Goffstein for failure to plead or otherwise defend. That same day, Pulaski also filed a motion for summary judgment against Hess and Barket. On May 18, 2011, the trial court entered a default judgment against Nantucket and Goffstein and denied Bank's motion for summary judgment against Hess and Barket.

Pulaski subsequently filed a motion for reconsideration of the trial court's Order denying Bank's motion for summary judgment against Hess and Barket. On November 10, 2011, the trial court vacated its prior order denying Pulaski's motion for summary judgment as to Hess, but re-affirmed its denial of summary judgment as to Barket. Pulaski then filed a second motion for summary judgment on its claim for breach of guaranty against Barket. The trial court granted Pulaski's second motion for summary judgment against Barket on July 11, 2012. Barket filed a motion to reconsider, amend, or set aside the judgment, which the trial court denied. Barket now appeals.

3

Point on Appeal

In his sole point on appeal, Barket asserts that the trial court erred in granting summary judgment in favor of Pulaski because the undisputed material facts demonstrated that Barket was entitled to judgment as a matter of law. Specifically, Barket alleges that the addition of new collateral to secure the Note constituted a material modification of the guaranty, which released him from his guaranty obligations.

Standard of Review

Our review of a grant of summary judgment is essentially *de novo*. ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law, and the criteria for testing it on appeal are no different from those employed by the trial court in its initial determination to grant summary judgment. Id. We will affirm a grant of summary judgment if there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Id. at 378. We review the record in the light most favorable to the party against whom judgment was entered. Id. at 376.

Discussion

Barket argues that the addition of new collateral to secure the Note materially altered his guaranty in two distinct ways. First, Barket contends that the clear language of the guaranty authorized Pulaski to take and hold security for payment of the guaranty only if to do so would not lessen Barket's liability. Barket then posits that adding the Glenwood property to Pulaski's collateral package reduced Barket's exposure in the event of a default and therefore lessened his liability. Second, Barket argues that the new collateral materially altered the risks contemplated by the guaranty in that after the addition of the Glenwood property, Barket stood to lose his

4

equity interest in unrelated real estate as well as his expectation of future rental income from that property.

In support his argument, Barket correctly states the general rule that a guarantor is entitled to a strict construction of his guaranty contract and any material alteration of the guarantor's obligation under the guaranty contract will discharge the guarantor. Lemay Bank & Trust Co. v. Lawrence, 710 S.W.2d 318, 322 (Mo. App. E.D. 1986). However, Barket ignores the remainder of this rule which provides that a material alteration does not discharge the guarantor if the guarantor has consented to the alteration. Id. ("Any material alteration of the guarantor's obligation under the guaranty contract will . . . discharge the guarantor, *unless the guarantor has consented to such alteration.*" (emphasis added)). Here, Barket expressly consented to the addition of new collateral to secure the Note when he executed a continuing guaranty that specifically authorized Pulaski to take and hold security for payment of the Note.

"A continuing guaranty is a type of guaranty agreement in which the parties contemplate guaranteeing a series of future debts or transactions, as opposed to a single debt or transaction." Rheem Mfg. Co. v. Progressive Wholesale Supply Co., 28 S.W.3d 333, 339 (Mo. App. E.D. 2000). Under a continuing guaranty, the guarantor agrees to be secondary obligor for all future obligations of the principal obligor to the obligee. Id. A continuing guaranty will continue until it is terminated upon notice to the obligee by the guarantor. Id. at 340.

The continuing guaranty executed by Barket provides, in pertinent part:

> **CONTINUING GUARANTY OF PAYMENT AND PERFORMANCE.** For good and valuable consideration Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower [Nantucket] to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the indebtedness or

5

against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. . . . Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

(bold in original, underscore added for emphasis). The word "Indebtedness" is defined in the guaranty as the entire principal amount outstanding, accrued unpaid interest, all collection costs and legal expenses, and all liabilities and obligations, now existing or hereafter acquired that Nantucket individually or collectively owes or will owe Pulaski. The word "Note" is defined as all of Nantucket's promissory notes and/or credit agreements evidencing Nantucket's loan obligations in favor of Pulaski together with all renewals of, extensions of, and modifications of promissory notes and credit agreements. The continuing guaranty further provides:

**CONTINUING GUARANTY**. THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROW TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS.

**GUARANTOR'S AUTHORIZATION TO LENDER**. Guarantor authorizes Lender either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** . . . (C) to take and hold security for the payment of the Guaranty or the Indebtedness and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral . . .

(bold in original, underscore added for emphasis).

Even assuming for purposes of this appeal that Pulaski's authority to take security for payment of the Note is limited to those circumstances where doing so would not lessen Barket's liability, we are not persuaded that Pulaski's procurement of additional collateral in any way lessened Barket's liability under the guaranty. The guaranty unequivocally states that it is a guaranty of payment and performance, not collection. Therefore, in the event of a default, Barket is liable under the guaranty for full payment of Nantucket's total indebtedness under the

6

Note, regardless of whether Pulaski has exercised its rights against any collateral securing the Note. The addition of the collateral did not alter Barket's legal obligation under the guaranty.

The clear and unambiguous language of the guaranty authorizes Pulaski "without notice or demand . . . to take and hold security for the payment of the Guaranty or the Indebtedness." When Barket executed the guaranty, he expressly consented to the addition of new collateral to secure the Note. A material modification of a guaranty does not discharge the guarantor where such modification was expressly consented to by the guarantor.[1] Lemay Bank & Trust Co., 710 S.W.2d at 322. Accordingly, Barket remains liable on the guaranty.

To recover on a contract of guaranty, a creditor must show "(1) that the defendant executed the guaranty, (2) that the defendant unconditionally delivered the guaranty to the creditor, (3) that the creditor, in reliance on the guaranty, thereafter extended credit to the debtor, and (4) that there is currently due and owing some sum of money from the debtor to the creditor that the guaranty purports to cover." ITT Commercial Fin. Corp, 854 S.W.2d at 382. There is no genuine dispute as to the facts required to prove these four elements. The uncontroverted summary judgment evidence establishes that Barket executed the continuing guaranty and delivered the guaranty to Pulaski; Pulaski, in reliance on the guaranty, extended credit to Nantucket; and there is currently due and owing a sum of money from Nantucket to Pulaski that is clearly covered by Barket's guaranty. Accordingly, the trial court did not err in entering summary judgment in favor of Pulaski.

We lastly note that Pulaski has requested this Court to award Pulaski additional interest accrued from February 29, 2012, to January 14, 2014, in the amount of $28,509.70, additional attorneys' fees in the amount of $8,517.00, and any additional interest, penalties, costs, and

---

[1] Because we find Barket consented to the addition of new collateral, we do not decide whether the addition of the Glenwood property constituted a material modification of the Note.

7

attorneys' fees Pulaski may have incurred after January 14, 2014.  Because the trial court is in a better position to hear evidence and argument on this issue, we remand to the trial court for the sole purpose of conducting a hearing to determine the appropriate amount of interest and the reasonableness of attorneys' fees requested on appeal by Pulaski and to enter judgment accordingly.  Sheppard v. East., 192 S.W.3d 518, 525 (Mo. App. E.D. 2006).

Conclusion

The judgment of the trial court is affirmed, and the case is remanded to the trial court with directions to conduct a hearing to determine the appropriate amount of interest and attorneys' fees.

Kurt S. Odenwald, Judge

Mary K. Hoff, P.J., Concurs
Angela T. Quigless, J., Concurs