**TRENTON TRUST COMPANY, Appellant,**

v.

**ESTATE OF G.O. MAXWELL, Respondent.**

**No. WD 38316.**

Missouri Court of Appeals, Western District.

Nov. 10, 1987.

Timothy J. Sear, Kansas City, for appellant.

Christopher P. Raynes, Trenton, for respondent.

Before NUGENT, P.J., and SHANGLER and BERREY, JJ.

NUGENT, Presiding Judge.

Claimant Trenton Trust Company appeals a ruling of the probate court ordering it to exhaust all means of collection before proceeding to collect against the estate of G.O. Maxwell.

We reverse.

On January 16, 1985, G.O. Maxwell executed a written guaranty agreement in favor of the Cook and Vencill Bank (now Trenton Trust Company) guarantying the indebtedness of Paul D. Callihan and Lena Callihan to the extent of $100,000. Trenton Trust Company succeeded to all the rights of Cook and Vencill Bank under the guaranty agreement. Before G.O. Maxwell died, the bank had lent the Callihans the sum of $100,000 by note dated December 29, 1983, secured by a deed of trust of the same date, executed and delivered by the Callihans on 517 acres of farm land in Sullivan County, Missouri. The Federal Land Bank holds a first and prior deed of trust on 400 of the 517 acres for a debt $120,000 owed by the Callihans. In addition, Hazel Crowdis holds a first and prior deed of trust on the remaining 117 acres for a $15,000 debt the Callihans owe. On June 26, 1985, the Callihans borrowed an additional $39,500 from Trenton Trust Company on a note co-signed by G.O. Maxwell as co-maker-guarantor.

On March 13, 1986, the probate court entered judgment in favor of claimant Trenton Trust Company against the estate of G.O. Maxwell in the amount of $111,-847.20, plus interest. Payment of the claim was conditioned, however, on Trenton Trust Company's exhausting all other means of collection on the notes. Trenton Trust Company filed a motion for reconsideration and modification of judgment. The court denied the motion, and the bank appealed.

The bank's first point is that the trial court erred in requiring it to exhaust all other means of collection before being allowed to execute against the estate. That point is dispositive.

■ G.O. Maxwell signed a guaranty agreement for $100,000 and signed as co-maker-guarantor of a $39,500 note for both Paul D. Callihan and Lena Callihan. Under § 400.3–413 "[t]he maker or acceptor engages that he will pay the institution according to its tenor at the time of his engagement...." According to § 400.3–416, the contract of the guarantor, " 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party." The loan guaranty agreement, signed by G.O. Maxwell, reads in part:

In case of the death, dissolution, liquidation, failure, insolvency or bankruptcy of said Debtor, all of said indebtedness, liabilities and obligations, to the extent of the amount of this guaranty, shall, at the option of said Bank, become immediately due from, and be forthwith paid by the undersigned to said Bank, the same as though said debts, liabilities and obligations had matured by lapse of time.

....

This guaranty shall be binding upon the undersigned jointly and severally, and upon the heirs, legal representatives and assigns of the undersigned, and each of them, respectively, and shall inure to the benefit of said Bank, its successors, legal representatives and assigns.

No condition to the co-maker's contract that other sources should first be exhausted was written into the instrument. The guaranty was unconditioned and absolute.

In *Great Western Printing Co. v. Belcher*, 104 S.W. 894, 895 (Mo.App.1907), the court stated that "the general rule is, if the contract of guaranty is absolute, the liability of the guarantor is commensurate with that of the principal, and whatever proof will make a case against the principal will

likewise make a case against the guarantor thereunder." The decedent's obligation as guarantor was to pay the notes when due, and the guarantor had no right to demand that the holder, the bank, first have recourse against other sources of collection. Mr. Maxwell obligated his heirs and legal representatives by specific terms of the agreement; his estate is also obligated. *See Stein v. Bruce*, 366 S.W.2d 732, 734–35 (Mo.App.1963).

■ The respondent estate's claim that Trenton Trust Company must exhaust its security, convert the security into money and collect any deficit from the estate, or surrender its security to the estate is in direct conflict with § 473.387, R.S.Mo., 1986, and *Yonke v. Estate of Alber*, 351 S.W.2d 794 (Mo.App. 1961). In *Yonke* this court held, at 796, "It is well settled in Missouri, and elsewhere, that a claimant may file a demand for the full amount of his claim against an estate *or* he may resort to his security."

Section 473.387 states, "The creditor may surrender his security and be paid out of the assets of the estate. Nothing in this law shall be construed to compel the creditor to surrender his security until he receives payment of his debt in full or he is paid the value of the security." The language of the statute is clear and unambiguous, and it does not require exhaustion. Trenton Trust Company may proceed directly against the estate of G.O. Maxwell, just as it could proceed against G.O. Maxwell if he were still living.

We reverse the judgment and enter judgment for the claimant Trenton Trust Company without prejudice to any right to subrogation that the estate may acquire.

All concur.