LEMAY BANK AND TRUST COMPANY, Plaintiff/Respondent,

v.

Harold R. HARPER, et al., Defendants/Appellants.

No. 58759.

Missouri Court of Appeals, Eastern District, Division Three.

June 4, 1991.

Timothy Hill Battern, St. Louis, for defendants/appellants.

Richard C. Bresnahan, Clayton, for plaintiff/respondent.

REINHARD, Presiding Judge.

Defendants appeal from a summary judgment against them as a result of their personal guaranty of promissory notes executed by Realistic Development, Inc. The guaranty was a continuing one. Defendants contend that there remain issues of fact to be determined; therefore plaintiff is not entitled to a judgment as a matter of law. We affirm.

From the record we learn that defendants Harold Harper and James Jokerst were the shareholders and officers of a now bankrupt corporation, Realistic Development, Inc. Each owned 50% of the stock of this corporation. The corporation was engaged in the construction and sale of residential homes. Mr. Harper, the president of Realistic, testified by deposition that he first approached plaintiff, Lemay Bank and Trust, in the spring of 1987 to apply for a construction loan to build a house on a lot already owned by Realistic. Lemay Bank agreed to make this loan for approximately $130,000 on the condition that Harper, Jokerst and their wives sign a "continuing guaranty". The loan documents and the personal guarantee were signed on April 23, 1987. This first loan was paid off by defendants after the successful completion and sale of the home.

The continuing guaranty was a 1½ page standard form. No loan amount was specified. Pertinent excerpts from the document include the following:

> The undersigned (Guarantor) ... hereby absolutely and unconditionally guarantees to Lemay Bank and Trust Company, a corporation (Bank), the prompt payment when due in accordance with the term thereof of any and all indebtedness or other obligations for the payment of money evidenced by notes, bonds, or other negotiable or non-negotiable instruments or in any manner whatsoever now or hereafter existing of Borrower to Bank, together with any and all extensions or renewals thereof.
>
> \* \* \* \* \* \*
>
> Notice of the acceptance of this guaranty and of the incurring of any indebtedness or obligation hereby guaranteed and presentment, demand of payment, notice of dishonor, protest, and notice of protest, or of default by Borrower, are hereby waived by Guarantor ...
>
> \* \* \* \* \* \*
>
> This guaranty shall be continuing and Bank may continue to act in reliance hereon until receipt by Bank of written

notice from Guarantor not to give further credit to Borrower, but such notice of revocation shall not release Guarantor from any indebtedness or obligation hereby guaranteed at the time of receipt of such notice.

Beginning in April, 1988, defendant Harper, acting in his capacity as president of Realistic, executed four promissory notes which are the subject of the current dispute. The loans were for various amounts with varying terms for repayment. At least one was to be used to purchase additional real estate upon which to build. The last loan was taken out on August 5, 1988, and was to be repaid on February 5, 1989. By the end of 1988 Realistic Development was experiencing severe financial difficulties. Housing sales had slowed, rock had been found on some of the lots, making construction more expensive, and Realistic was involved in a lawsuit over the use of roadways in a subdivision. It appears from the record that some payments were made on the four loans. However, of the original $596,260.00 that had been borrowed, as of August 22, 1989, when plaintiff filed its Petition on Breach of Guarantee, $555,316.86 in principal was still unpaid.

It is unclear when Realistic Development went into bankruptcy. A document called a "disclosure statement" was filed with the bankruptcy court on April 21, 1989. It is also unclear when Lemay Bank foreclosed upon the real estate that secured the four loans. By the time plaintiff filed its Motion for Summary Judgment on May 15, 1990, the amount owed had been reduced by "offsets and credits" to $90,411.00. A hearing on the Motion was set for June 19, 1990. On the day the hearing was to occur defendants filed a Memorandum in Opposition to Motion for Summary Judgment, Affidavits from the four defendants, an Amended Answer, and a Counterclaim. On the same day the trial court entered its judgment holding that "there are no material issues of fact and as a matter law plaintiff is entitled to summary judgment based upon the pleadings, depositions, affidavits and evidence adduced ..." The court awarded plaintiffs the sum of $90,411.00

"pursuant to the promissory notes of Realistic Development, Inc. and the personal guarantees of Defendants Harold R. Harper, Janet L. Harper, James Jokerst and Cheryl Jokerst ..." This appeal followed.

The principles of law for review of summary judgment are well established. "In ruling on a motion for summary judgment, the trial court and the appellate court must scrutinize the record in the light most favorable to the parties against whom the motion was filed and to accord to such parties the benefit of every doubt." *Edwards v. Heidelbaugh,* 574 S.W.2d 25, 26–27 (Mo.App.1978). Summary judgment is appropriate, however, when the documents before the trial court, including pleadings, depositions, admissions and exhibits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Signature Pool v. City of Manchester,* 743 S.W.2d 538 (Mo.App.1987). "If there is the slightest doubt about the facts a material issue of fact exists." (Citations omitted.) *Triggs v. Risinger,* 772 S.W.2d 381, 382 (Mo.App.1989).

■ Plaintiff's motion relied upon the pleadings, affidavits and depositions. Defendants countered with affidavits of defendants which were filed the same date of the hearing on the motion which was June 19, 1990. The amended answer and counterclaim also were filed on that date. The documents filed by defendants on June 19, 1990, were not timely filed with the trial court and thus will not be considered as part of the record on appeal. Rule 74.04(c) provides that opposing affidavits may be served "prior to the day of hearing." *See Estate of Heidt,* 785 S.W.2d 668, 671 (Mo. App.1990). In any event, none of the documents filed on June 19, 1990, contained any additional information relevant to the issues of this appeal.

■ Defendants assert that the trial court erred in granting summary judgment because issues of fact remain. We disagree. "A continuing guaranty is simply a divisible offer for a series of separate unilateral contracts. (Citations omitted.) A

continuing guaranty contemplates a series of transactions between debtor and creditor, rather than a single debt." *Boatmen's Bank v. Community Interiors,* 721 S.W.2d 72,79–80 (Mo.App.1986). The contract continues until guarantor terminates it. *Id.*

There is no issue of fact remaining as to the execution of a continuing guaranty by defendants. There is no claim that any of the defendants terminated the guaranty. There is no dispute as to the execution of the notes constituting the subject matter of this lawsuit and there is no issue as to the amount due at the time of judgment on these notes.

Defendants allege that three specific categories of "genuine issues of material fact" did exist. As will be shown, defendants' allegations are not factual but merely "a differing opinion … as to the legal effect of an ascertained set of facts." *Packet Dairy v. Ziegler's Super Market,* 676 S.W.2d 926, 927 (Mo.App.1984).

■■■ Defendants first claim that Lemay Bank breached the contract because it failed to notify defendants of default and failed to "take steps to minimize damage to [defendants]." Both of these contentions are wholly without support in the record. As to the first, the continuing guaranty clearly states that the guarantors waive notice of default. In addition, defendants as the sole directors of the corporation were surely aware of its default. As to the second, defendants' obligation as guarantors was to pay the notes when due, the same obligation as that of the principal. The guarantors "had no right to demand that the holder, the bank, first have recourse against other sources of collection." *Trenton Trust Co. v. Estate of Maxwell,* 739 S.W.2d 742, 744 (Mo.App.1987). In addition, defendants offer no factual proof that plaintiff did not attempt to minimize damage. Indeed, the record suggests the opposite. While the original debt exceeded $500,000, defendants have been asked to pay $90,000. This suggests that plaintiff made diligent attempts to recoup their losses from corporate assets before requesting the guarantors to honor their guarantee.

■■■ Defendants' second and third alleged issues of material fact charge that plaintiff breached both a fiduciary duty and an implied covenant of good faith. Defendants admit these assertions are in opposition to the law as stated in *Centerre Bank of Kansas City v. Distributors,* 705 S.W.2d 42 (Mo.App.1985). In that case, our colleagues in the Western District wrote:

This court is not willing to rewrite the agreement which Distributors made that the demand note which it executed could be called for payment at anytime by adding a provision that payment could only be demanded in good faith. *Id.* at 48. With respect to fiduciary duty the court held: "There is no confidential or fiduciary relationship between a bank and a customer borrowing funds." *Id.* at 53.

■■■ The undisputed facts are that defendants signed a continuing guaranty whose terms were clear and unequivocal, that the corporation whose debts defendants were guaranteeing obtained and used loans made pursuant to the guaranty, and that the corporation defaulted upon the obligations. Defendant makes no claim that any of the above facts are disputed.

We have reviewed the entire record in the light most favorable to defendants, *see Hayes v. Hatfield,* 758 S.W.2d 470, 472 (Mo.App.1988), and agree with the trial court that summary judgment is appropriate.

Judgment affirmed.

STEPHAN and CRANE, JJ., concur.