**Cecilia M. LINNENBRINK, Respondent,**

v.

**FIRST NATIONAL BANK OF LEE'S SUMMIT, MO., et al., Appellant.**

**No. WD 45255.**

Missouri Court of Appeals,
Western District.

Argued June 29, 1992.

Decided Aug. 18, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 29, 1992.

Application to Transfer Denied
Nov. 24, 1992.

Kevin Blackwell, Paden, Welch, Martin & Albano, P.C., Independence, for appellant.

William C. Partin, Matthew K. Partin, Partin & Partin, P.C., Kansas City, for respondent.

Before LOWENSTEIN, C.J., and BERREY and SMART, JJ.

SMART, Judge.

First National Bank of Lee's Summit and Robert H. Martin appeal from a judgment entering a permanent injunction restraining them from foreclosing on the home of Cecilia Linnenbrink, respondent, under her deed of trust executed on October 29, 1987. The 1987 deed of trust was executed to secure a line of credit for Ms. Linnenbrink's son, Bernard Linnenbrink, (hereafter "Bernard") which was to expire in one year. First National sought to foreclose on the 1987 deed of trust due to Bernard's default on a subsequent line of credit, which Bernard executed in 1989.

The judgment is affirmed.

In 1986, Ms. Linnenbrink executed a deed of trust to her residence securing a line of credit for Bernard. Bernard satisfied all indebtedness under the 1986 line of credit within its one year term and Ms. Linnenbrink's deed of trust was released after final payment was made on May 1, 1987. On October 29, 1987, Bernard and First National Bank executed several documents providing Bernard with a new line of credit in the amount of $80,000.00. The new line of credit was again secured by a deed of trust on Ms. Linnenbrink's residence. This 1987 transaction and the line of credit issued in 1989 are the transactions at issue on this appeal.

Several documents were executed between First National, Bernard and Ms. Linnenbrink for the 1987 transaction. First, Bernard signed a document entitled "Obligatory And/Or Discretionary Line of Credit Agreement" which extended an $80,000.00 line of credit to Bernard scheduled to expire on October 29, 1988. Contemporaneously, Bernard executed a promissory note for $80,000.00 payable on demand. The back side of the promissory note contained a guaranty form which was left completely blank. On the same day, Ms. Linnenbrink executed a deed of trust in favor of the bank. The deed of trust purported to secure payment of the particular $80,000 promissory noted dated October 29, 1987. Ms. Linnenbrink also executed a document entitled "Hypothecation Agreement." The hypothecation agreement expressly authorized Bernard to pledge the residential property of Ms. Linnenbrink as security for any present or future indebtedness. Several advancements were made to Bernard throughout the year and all amounts advanced were repaid by September 6, 1988. Both parties agree that Bernard's 1987 line of credit expired on October 29, 1988. At that time, there was no outstanding indebtedness.

On February 13, 1989, Bernard entered into a third line of credit with First National. This agreement was identical in terms with the 1987 line of credit. It is disputed whether a new promissory note was executed in conjunction with the 1989 line of credit. However, it is clear that no new deed of trust was executed. In the section marked "RELATED DOCUMENTS," reference was made to the promissory note and deed of trust executed on October 29, 1987. The line of credit agreement stated that the lender was entitled to "all of the benefits and security" provided for in the 1987 note and deed of trust. Both parties agree that Ms. Linnenbrink was neither contacted nor given notice concerning the 1989 line of credit. Bernard took out several advances on this line of credit but eventually defaulted on the amounts advanced. On September 26, 1990, Robert Martin started foreclosure proceedings in response to which Ms. Linnenbrink filed a Petition for Declaratory and Injunctive Relief. The court granted a temporary injunction, which was later made permanent.

This court is bound on review of this court-tried case by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), which requires this court to affirm the trial court's decision unless the record indicates that there is not substantial and competent evidence to support the judge's findings, the decision is clearly contrary to the weight of the evidence, or the trial court erroneously declared or applied the law. The evidence, and any legitimate inferences therefrom must be viewed in the light most favorable to the trial court's decision and all contrary evidence should be disregarded. *King v. King*, 793 S.W.2d 200, 202 (Mo.App.1990). This appellate court may

not substitute its judgment for that of the trial court's. *Id.* Additionally, great deference must be given to the trial court's resolution of conflicts in evidence, even if the evidence could support a different conclusion. *Id.*

First National's sole point on appeal is that the trial court erred in enjoining the foreclosure sale because when all of the relevant documents are construed together, they indicate the parties' intent that Ms. Linnenbrink's residence serve as collateral for future advances to her son. Specifically, First National contends that the Hypothecation Agreement and deed of trust create a continuing guaranty for advancements on the lines of credit, and that therefore no new deed of trust was required to secure the 1989 line of credit agreement. Ms. Linnenbrink argues that it was her understanding when she entered into the agreement that the deed of trust she executed was for a period of one year only. The trial court ruled in favor of Ms. Linnenbrink finding that when construed together, the documents were not inconsistent with either party's position and that therefore they should be construed against First National, the maker.

The trial court found that the Hypothecation Agreement did not meet the requirements under Missouri law to be considered a guaranty of Bernard's obligations. The court stated that Hypothecation Agreements are generally used to pledge personal property in a situation where the pledgor remains in possession of the collateral pledged. Consistent with this theory, the court pointed out that the language of the agreement talked in terms of pledging corporate stocks and bonds rather than the real property described therein. The court concluded that since the language of the agreement was inconsistent with the transaction for which it was used, the agreement could only be relied upon for memorializing Ms. Linnenbrink's consideration for her deed of trust.

■ In Missouri, a guaranty agreement must contain the express conditions of the guaranty, specifically stating, within the four corners of the document, the liabil-

ity and obligations of each party. *Standard Meat Co. v. Taco Kid of Springfield, Inc.,* 554 S.W.2d 592, 595 (Mo.App.1977). Furthermore, a guarantor should be bound only by the "precise words of his contract, and no stretching or extension of terms can be indulged in order to hold the guarantor liable." *U.S. Suzuki Motor Corp. v. Johnson,* 673 S.W.2d 105, 107 (Mo.App.1984).

■ The record clearly demonstrates that the Hypothecation Agreement could not be classified as a continuing guaranty under Missouri law. No form of the word "guaranty" appears anywhere in the document. The entire structure of the document revolves around hypothecating or pledging securities. The only section of the agreement dealing with real property in any form is the section containing Ms. Linnenbrink's legal description of her home, which is typed into the blank on the preprinted form. After analyzing the precise words of the agreement, the trial court found that it did not meet the requirements to serve as a guaranty. This court agrees. It would require a great "stretching or extension of terms" to find this agreement to constitute a guaranty, and Missouri law prohibits such an indulgence. *See Johnson,* 673 S.W.2d at 107. In fact, it is unclear from the evidence whether First National actually intended such an interpretation of the Hypothecation Agreement at the time of its execution.

■ By its plain terms, the agreement merely purported to serve as a power of attorney to authorize Bernard to pledge her house. The language of the document reads as follows: "The undersigned hereby authorizes *Bernard J. Linnenbrink Jr.* (herein called Debtor) to hypothecate, pledge and/or deliver the securities/ security described below belonging to the undersigned ..." The record fails to show any action on Bernard Linnenbrink's part to execute a deed of trust or mortgage document with respect to Ms. Linnenbrink's property, which was legally described in the agreement. However, the language of the agreement requires such action be taken by Bernard before any right of foreclosure could accrue in favor of the bank under the Hypothecation Agreement.

Since no such action was taken by Bernard, the bank could not be entitled to foreclose on the deed of trust based on the Hypothecation Agreement.

Furthermore, both the deed of trust and the promissory note must be read in conjunction with the 1987 line of credit agreement, which clearly provides an expiration date of October 29, 1988. Therefore, foreclosure on Ms. Linnenbrink's home under the 1987 deed of trust could not be a proper remedy for First National.

 For the foregoing reasons, this court concludes that the trial court could have held as a matter of law that the documents, by their plain terms, did not allow the bank recourse to Ms. Linnenbrink's residence, regardless of any parol evidence. However, the same result is achieved by the court's finding that when all the documents were construed together, they were open to two interpretations. A contract open to two interpretations is ambiguous. *Vandever v. Junior College District of Metropolitan Kansas City*, 708 S.W.2d 711, 717 (Mo.App.1986). The interpretation of an ambiguous contract is to be based upon an analysis of the extrinsic circumstances surrounding the transaction. *Ridley v. Newsome*, 754 S.W.2d 912, 915 (Mo.App.1988). "Courts may look at the contract itself, any subsidiary agreements, the relationship between the parties, and the construction placed upon the contract by the parties themselves manifested by their own actions and deeds." *Id.* Moreover, the general rule that an ambiguous contract should be construed in favor of the party who merely signed it and against the document's drafter supports the judgment in favor of Ms. Linnenbrink. *John Deere Co. v. Hensley*, 527 S.W.2d 363 (Mo. 1975); *Empire Gas Corp. v. Small's LP Gas Co.*, 637 S.W.2d 239 (Mo.App.1982).

 Each party testified as to a different understanding of the relationship created by the transaction. Ms. Linnenbrink testified that it was her understanding that the line of credit, and thus the applicability of the deed of trust, expired one year from the execution of the documents. Ms. Linnenbrink's understanding follows from the manner in which the 1986 transaction was carried out. After one year had elapsed from the making of the 1986 transaction, the line of credit expired and the deed of trust was released. When Ms. Linnenbrink entered into the 1987 transaction, a new promissory note was executed by Bernard, and new deed of trust was executed by Ms. Linnenbrink. However, in the 1989 transaction, a new line of credit agreement was executed, no new deed of trust was executed to secure the line of credit. The facts are disputed as to whether a new promissory note was indeed executed.[1] Based on the 1987 transaction, it was reasonable for Ms. Linnenbrink to expect a new deed of trust to be executed and for her to be consulted before she would incur any liability under a newly executed line of credit. Neither of these events occurred.

Upon consideration of the evidence concerning the manner in which each line of credit transaction was executed, the language found in each document, and the testimony of all parties involved, this court holds that the trial court's issuance of a permanent injunction barring First National's foreclosure on Ms. Linnenbrink's home was supported by substantial evidence, was not against the weight of the evidence, and was not an erroneous application of the law.

The judgment is affirmed.

All concur.

---

1. The evidence does not show that a new document labeled "Promissory Note" was executed. However, the evidence reveals that the bank's internal records, which include set-up sheets and a loan history printout, show the existence of a new promissory note dated February 10, 1989. A new reference number was created for a promissory note dated February 10, 1989 in the bank's internal records. Furthermore, testimony elicited from Wayne Brooke, the bank's loan officer who handled all three line of credit transactions, established that it was not the bank's customary practice to assign a new note number when a line of credit was renewed or extended. Instead, the bank generally added "-01" to the end of the note number.