Richard ULREICH, Respondent,

v.

Edward C. KREUTZ, et al., Appellants.

No. 63382.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 5, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 4, 1994.

Application to Transfer Denied
June 21, 1994.

CARL R. GAERTNER, Judge.

Defendants appeal from a judgment entered in favor of plaintiff, Richard Ulreich, in the amount of $86,342.73 in principal and $20,653.47 in interest due on a promissory note and $12,000 in attorney's fees based upon plaintiff's claim that defendants guaranteed the payment of the note by executing a personal guaranty.

Because defendants challenge the trial court's judgment in favor of plaintiff, we recite the evidence in the light most favorable to plaintiff. Plaintiff and his father, William Ulreich, (William) owned all of Imperial Baking Company's (Imperial) outstanding stock. Plaintiff owned 120 shares, and William owned 680 shares. Defendants were major shareholders of the stock of Professional Host System (Host).

On February 23, 1983, plaintiff and William drafted, signed, and tendered to Host a written agreement to sell Imperial to Host. Acting on behalf of Host, the company's president, Edward Kreutz, signed the agreement. The contract provided that plaintiff and William would transfer 680 shares of Imperial stock to Host in exchange for $50,000 in cash and two promissory notes totaling $228,000. The agreement further provided that their remaining 120 shares of Imperial stock would be redeemed upon completion of the purchase of the 680 shares. At the same time, plaintiff and William also tendered to Host a personal guaranty agreement which their attorney had drafted. The guaranty, in pertinent part, provided for "the prompt payment ... of all loans and credit made to HOST by [William] ULREICH, as well as the renewals thereof, not to exceed ... $228,000."

On October 26, 1983, the parties closed on the transaction. On Host's behalf, Kreutz signed and delivered the two promissory notes. The first note was in the amount of $50,000 payable within six months with interest at 10 percent per year. The second note was in the amount of $178,000 with interest at 10 percent per year payable in installments of $2,352.35 per month for 120 months beginning on April 1, 1983. Both notes were

Julius H. Berg, St. Louis, for appellants.

Joseph R. Burcke, St. Louis, for respondent.

to be paid to the order of William Ulreich. Kreutz simultaneously tendered the personal guaranty which defendants had signed.

On March 28, 1983, William died. Host paid in full the amount due on the first promissory note. However, in September 1988, Host defaulted on the second note. Imperial Baking made the monthly payments from November 1988 through August 1989. As the successor in interest to the note, plaintiff demanded from defendants, as guarantors, the full payment of the balance due on the note which defendants refused to tender.

Plaintiff filed a petition on December 19, 1989, which he amended on November 7, 1990. In the first count, plaintiff sought a deficiency judgment against Host for its default on the promissory note. In the second count, plaintiff sought from defendants the principal and interest due on the note plus attorney's fees, alleging that defendants guaranteed the payment of the note by executing the personal guaranty. On October 21, 1991, plaintiff filed a motion for summary judgment on both counts. The trial court granted the motion as to plaintiff's first count but overruled the motion as to the second count.

The second count went to trial on December 16, 1992. After hearing testimony from plaintiff, plaintiff's attorney, and Edward Kreutz, the court entered its judgment against defendants, finding that the guaranty was not ambiguous, the guaranty and promissory notes were executed contemporaneously, and the notes represented a loan from William to Host which the guaranty covered. This appeal followed.

■ As a preliminary matter, defendants contend the trial court erred in adopting, almost verbatim, plaintiff's proposed findings of fact and conclusions of law. While this practice has been criticized, it is not *per se* erroneous. *E.L.S. v. F.M.S.,* 829 S.W.2d 19, 21 (Mo.App.1992); *In re Marriage of Thomas,* 829 S.W.2d 491, 493 (Mo.App.1992). Our review of the judgment in this court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We will sustain the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law or it erroneously applies the law. *Id.* at 32. We must view the evidence in the light most favorable to the trial court's decision, and all contrary evidence will be disregarded. *Linnenbrink v. First National Bank,* 839 S.W.2d 618, 620 (Mo.App.1992).

## I. Guaranty

■ In their first point, defendants claim the trial court erred in finding that the guaranty was intended to guarantee the payment of the promissory notes. Defendants argue that the precise language of the guaranty indicates it was only intended to guarantee the payment of future loans.

■ In Missouri, it is well-settled that the liability of a guarantor is to be strictly construed according to the terms of the guaranty agreement and may not be extended by implication beyond the strict letter of the obligation. *Royal Banks of Mo. v. Fridkin,* 819 S.W.2d 359, 362 (Mo. banc 1991); *Linnenbrink,* 839 S.W.2d at 621. The terms of a guaranty "are to be understood in their plain and ordinary sense, when read in the light of the surrounding circumstances and the object intended to be accomplished." *U.S. Suzuki Motor Corp. v. Johnson,* 673 S.W.2d 105, 107 (Mo.App.1984). A guaranty may be construed together with any contemporaneously executed agreements dealing with the same subject matter as an aid in ascertaining the intention of the parties. *Standard Meat Co. v. Taco Kid of Springfield, Inc.,* 554 S.W.2d 592, 595 (Mo.App.1977). However, a guarantor's liability is primarily dependent upon the guaranty agreement itself. *Id.; see also Boatmen's Bank v. Community Interiors, Inc.,* 721 S.W.2d 72, 79 (Mo.App.1986).

In the present case, it is clear the trial court in no way extended defendants' obligation. In the guaranty, defendants guaranteed the payment of *all* "loans," "credit" and "indebtedness" made to them by William Ulreich. These terms certainly encompass defendants' leveraged purchase of the Imperial stock. By executing and tendering the promissory notes in exchange for the stock, defendants entered into a debtor-creditor

transaction with William and plaintiff which the guaranty covers.

Moreover, the evidence indicates the notes and guaranty were executed contemporaneously and concern the same subject matter—defendants' indebtedness to William. Construing these agreements together, it is clear that the guaranty applies to the promissory notes. The guaranty mentions defendants' agreement to buy the Imperial stock and the use of the notes to finance the purchase. Furthermore, the guaranty provided a $228,000 limit on defendants' liability which matches the amount of the promissory notes. The totality of this evidence further supports the court's finding that defendants guaranteed the payment of the notes.

Defendants counter that the guaranty was intended to be a continuing guaranty, obligating defendants to guarantee the payment of any loans made to them by William *after* the execution of the guaranty.

To bolster their argument, defendants cite the guaranty, which provides a waiver of notice for "the making or renewing of any loan or indebtedness," and Kreutz's testimony that he thought the guaranty only applied to "future borrowing or advances of funds." Defendants also point out that the purchase agreement itself indicates that the parties contemplated such future borrowing or advances of funds in the redemption portion of the agreement which provided that: "the Sellers [William and plaintiff] may, at their option, reduce the amount of cash to be distributed in redemption of Sellers' shares of stock in order to provide the Company with a cash reserve for payment of said liabilities."

■ Defendants' argument is premised upon their assertion that the agreement was a continuing guaranty of future loans which had no application to the promissory notes. A continuing guarantee is a divisible offer for a series of separate unilateral contracts. It contemplates a series of transactions between the debtor and creditor, rather than a single debt. *Lemay Bank & Trust Co. v. Harper*, 810 S.W.2d 690, 692–93 (Mo.App. 1991). Even if the agreement could be construed as a continuing guaranty, this in no way undermines the trial court's finding that the defendants guaranteed the payment of the notes. By their agreement, defendants guaranteed the payment of *all* loans and credit, including the notes. *See Boatmen's Bank*, 721 S.W.2d at 79–80. Point denied.

## II. Attorney's Fees

■ In their second point, defendants contend the trial court erred in finding them liable for plaintiff's attorney's fees. Defendants assert that as unconditional guarantors of payment they were only obligated to pay the balance due on any matured debts that they guaranteed. Therefore, they are not liable for the expenses plaintiff incurred in attempting to collect on the note.

Our legislature has recognized in the Missouri Uniform Commercial Code a distinction between a guaranty of payment and a guaranty of collection. § 400.3–419 RSMo. Supp. 1993. A guaranty of payment is absolute and binds the guarantor to pay the primary debt at maturity if the principal debtor has not done so. Upon default by the debtor, the guarantor's obligation becomes fixed. *See Trenton Trust Co. v. Estate of Maxwell*, 739 S.W.2d 742, 743–44 (Mo.App.1987); 38 Am. Jur.2d Guaranty § 22. A guaranty of collection, however, is conditional, obligating the guarantor to pay the debt only if the creditor has attempted unsuccessfully but with due diligence to collect the claim from the principal debtor. *See* § 400.3–419(d) RSMo. Supp. 1993; 38 Am.Jur.2d Guaranty § 22.

Many jurisdictions have noted an additional distinction between these two types of guaranties. A guarantor of the collection of a debt has often been found liable for the expenses incurred by the creditor in attempting to collect on the debt because these expenses, by the nature of such a guaranty, are within the contemplation of the parties. 38 Am.Jur.2d Guaranty § 75. A guarantor of payment, however, is not always held liable for such expenses. The guarantor's liability under a guaranty of payment becomes absolute upon the principal debtor's default; therefore, any costs incurred in attempting to collect on the debt are voluntary. 38 Am.Jur.2d Guaranty § 75.

In the present case, the guaranty clearly is an unconditional guaranty of payment. The agreement provides that defendants' obligation to pay any guaranteed debt would become fixed upon default by Host and that "it shall not be necessary for [William] ULREICH, in order to enforce such payment by [defendants] to first institute suit or exhaust his remedies against HOST or others liable upon such indebtedness."

The guaranty is silent as to defendants' liability for any costs or attorney's fees incurred by William or plaintiff to enforce the note and guaranty. The note itself, however, provides that if it is not paid and "is referred to an attorney for collection ... the undersigned promise to pay and the holder shall be entitled to recover, the reasonable fees and expenses of such an attorney in addition to the full balance due hereon." Under these circumstances, jurisdictions have disagreed as to whether such a provision in the primary obligation creates a liability on the part of the guarantor. *See* 38 Am.Jur.2d Guaranty § 75. In *Henty Construction Co. v. Hall,* 783 S.W.2d 412 (Mo.App.1989), however, this court decided this issue in favor of the creditor. In *Henty,* the creditor filed suit against a couple who unconditionally guaranteed the payment of a promissory note. *Id.* at 413, 417. The note provided that any collection fees incurred by the holder would be paid by the maker. *Id.* at 417. We held that the liability of the guarantors was the same as that of the maker of the note thereby obligating the guarantors to pay the creditor's attorney's fees in addition to the principal and interest due on the note. *Id.* at 417–18. *Henty* merely followed the long-standing rule in Missouri. In *Townsend v. Alewel,* 202 S.W. 447, 448 (Mo.App.1918), the rule was succinctly stated as follows: "Defendant guaranteed payment of the note. That meant the note as written, and the note included the payment of an attorney's fee." Point denied.

The judgment of the trial court is affirmed.

GRIMM, P.J., and AHRENS, J., concur.